MACE, APPELLEE, *v.* SCANLON, ADMR., BUREAU OF WORKMEN'S COMP.; NATCO CORP., APPELLANT.[*]

(No. 238—Decided March 4, 1960.)

*Mr. R. N. Larrimer, Mr. Leander P. Zwick, Jr.,* and *Mr. Phil A. Henderson,* for appellee.

*Mr. James F. Shumaker,* for appellant.

GILLEN, P. J.   The record in this case discloses that Marion Mace, for a number of years, was employed by the Natco Corporation as a motor operator.   On February 16, 1953, while he was sitting on the iron seat of a motor, a string of cars broke loose and crashed into the motor knocking Mace forward and then backward in a sitting position astride a trolley pole.   He received an injury to the rectal area of his body.   Although suffering from the injury, he continued to work until March 3,

---

*Motion to certify the record overruled, October 5, 1960.

1953. Mrs. Mace testified that, in the interim, she made the following observation of his rectum:

"Q. Now, what did this look like? What color was it? A. Well, just looked like it was inflamed and pussy like.

"Q. When you say that this area of his body, his rectum, was pussy like, how long did it continue to be pussy like? A. Quite a bit.

"Q. And did this ever begin to drain? A. Yes, sir."

His condition became gradually worse and, on February 27, he was examined by Dr. Bullock of McArthur, Ohio. He entered Hocking Valley Hospital, Logan, Ohio, March 9, where he underwent surgery for the excision of a fistula and hemorrhoidectomy. He was released from the hospital March 15. He returned to work April 12 and continued working until July 17, at which time he was re-admitted to Hocking Valley Hospital. He was transferred to University Hospital, Columbus, Ohio, July 29, where, after a diagnostic survey, it was determined that he had Hodgkin's Disease. He was discharged from University Hospital on August 7 and returned to work until September 13, when he was re-admitted to University Hospital. He was released from University Hospital on September 15 and returned to Hocking Valley Hospital on October 7, where his death occurred October 15, 1953, from Hodgkin's Disease. Prior to his injury, in February, he apparently was in good health and steadily employed. Following his injury his health steadily declined until the time of his death in October.

His application for compensation was allowed by the Industrial Commission and payments for total disability were made until April 11, 1953, including hospital and medical expenses. Following his death, his widow filed an application for death benefits, which was disallowed by the Industrial Commission. From that order she perfected an appeal to the Court of Common Pleas of Hocking County, Ohio, and in her amended petition the Administrator of the Bureau of Workmen's Compensation and the employer, Natco Corporation, were made parties defendant. A jury trial was had resulting in a verdict and judgment for plaintiff. The Administrator of the Bureau of Workmen's Compensation was represented by Brown W. Pettit, an assistant attorney general, and the Natco Corpora-

tion was represented by attorney James F. Shumaker. At the close of plaintiff's evidence, Mr. Pettit made the following motion:

"Let the record show a motion for directed verdict with the reservation in the event of an adverse ruling, that we may proceed to present our testimony and go to the jury."

He renewed his motion at the close of all the evidence. Both motions were overruled.

Mr. Shumaker did not make separate motions on behalf of his client, and it is urged that he thereby waived his right to have the evidence reviewed by this court. Since both attorneys, although representing different clients, joined in defending the action, we do not deem it necessary for them to make separate motions presenting the identical question for the court to consider. Such procedure would only encumber the record and serve no useful purpose. It is obvious that the court's ruling would have been the same if separate motions had been made. Mr. Shumaker, on behalf of his client, filed a motion for a new trial, which was overruled. Thereafter, Natco Corporation filed a notice of appeal on questions of law. The Attorney General's representative did not file a notice of appeal on behalf of the Administrator of the Bureau of Workmen's Compensation.

The first proposition to be considered by this court is plaintiff's motion to dismiss the appeal, which motion reads as follows:

"The Court of Appeals has no jurisdiction to entertain an appeal by a state fund employer-defendant where the death of the decedent upon which the case was based occurred two years before the Legislature enacted legislation granting an employer a right of appeal in a state fund claim."

At the time of Marion Mace's injury on February 16, 1953, Section 1465-90, General Code, was in effect, and at the time of his death on October 15, 1953, Section 4123.51, Revised Code, was in effect. This latter section provided, among other things and in language substantially similar to that in the General Code, that:

"If the claimant is seeking compensation from the State Insurance Fund, the defendant in such action shall be the commission and summons shall be issued to the commission and also to the Attorney General."

Plaintiff filed her claim for death benefits on April 13, 1955. The Legislature repealed Section 4123.51, Revised Code, and enacted Section 4123.519, Revised Code (126 Ohio Laws, 1015, 1026), an analogous section, effective October 5, 1955. This statute (Section 4123.519, *supra*) bears the caption "Appeal to Court of Common Pleas" and the procedure to be followed in such appeals is prescribed therein. Section 4123.519, Revised Code (126 Ohio Laws, 1015, 1026), provides, in part, that:

"The Administrator of the Bureau of Workmen's Compensation, the claimant, and the employer shall be parties to such appeal and the commission shall be made a party if it makes application therefor."

When plaintiff filed her petition in the Court of Common Pleas of Hocking County in February 1956, appealing from the order of the Industrial Commission disallowing her claim, she named the Administrator of the Bureau of Workmen's Compensation, the Industrial Commission of Ohio and Natco Corporation as parties defendant. Later she filed an amended petition making only the Administrator of the Bureau of Workmen's Compensation and the employer parties defendant. In other words, she followed the procedure pursuant to the provisions set forth in Section 4123.519, Revised Code, rather than the procedure contained in Section 1465-90, Ohio General Code, which was in effect at the time of decedent's injury and, the provisions of which, in substance, were in effect at the time of decedent's death.

In support of plaintiff's motion to dismiss the appeal on jurisdictional grounds, the case of *State, ex rel. Jones & Laughlin Steel Corp., v. Dickerson*, 160 Ohio St., 223, is relied upon. The syllabus in that case reads:

"The right of a dependent of a deceased employee to compensation under the Workmen's Compensation Act accrues upon the death of such employee from an injury received in the course of his employment; and the statutory law in force on the date of such death is controlling as to the maximum amount of such compensation."

An examination of the entire case makes clear the fact that the court was considering the substantive rights of claimant. Her husband had been paid compensation for permanent total

disability from October 27, 1948, to May 2, 1952, at which time his death occurred as a result of the injury. At the time of decedent's injury the maximum amount of death benefit was $7,500 and prior to his death May 2, 1952, the Legislature had increased the maximum to $9,000. At the time of his injury the right of his surviving spouse to receive death benefits was only contingent and such right did not actually accrue until his death. The court determined that the statute fixing the maximum award in effect at that time was controlling.

In the case at bar the statutory changes set forth above prescribing the procedure to be pursued in perfecting an appeal to the Court of Common Pleas did not in any way modify or change the substantive rights of plaintiff. The sole question to be determined on her appeal to the Court of Common Pleas was whether she was entitled to participate in the State Insurance Fund. Prior to the changes in the provisions contained in Section 1465-90, General Code, the interest of an employer in the outcome of a claim pending before the Industrial Commission was recognized to the extent that such employer could participate in a rehearing proceeding before the commission. In event the claimant prosecuted an appeal to the Court of Common Pleas from a final order of the Industrial Commission only the commission could be made a party defendant. By the enactment of Section 4123.519, Revised Code, the Legislature further recognized the interest of an employer by making such employer a necessary party to an action on appeal. This procedural change did not modify the substantive right of a claimant. The right of a claimant to participate in the State Insurance Fund is controlled by other statutory provisions. The employer, in the instant case, having been made a party defendant by the operation of legislative enactment, had not only the right to appear and defend the action but also the right to perfect an appeal from a final court order.

"Generally speaking, the parties who are entitled to a review of a judgment or order of a court are those who are parties to the record in the action in which the judgment in question was rendered or the order made." See 2 Ohio Jurisprudence (2d), 758, Section 153.

Plaintiff's motion to dismiss the appeal is overruled.

It is the claim of plaintiff that there was a direct and proximate causal relationship between Mr. Mace's injury to his rectal area on February 16, 1953, and the Hodgkin's Disease resulting in his death on October 15, 1953. The facts in regard to decedent's injury and subsequent events until the time of his death as heretofore outlined are not in dispute. There is no claim that decedent's death was the result of a pre-existing disease accelerated by an accidental injury in the course of and arising out of his employment. The sole question in dispute is whether there was a direct and proximate causal relationship between the injury and the Hodgkin's Disease. On this subject the medical testimony adduced at the trial is in sharp conflict. Plaintiff relied upon the testimony of Doctor Jonathan Forman who has been on the faculty of the College of Medicine of The Ohio State University for 46 years. He has spent many years in medical research, including a study of Hodgkin's Disease. Expressing an opinion, in answer to a hypothetical question, Doctor Forman said:

"There is a direct causal relationship between the injuries sustained as described by you, the symptoms that followed, the course of the man's health downward until he died on October 15, 1953, from Hodgkin's Disease."

Explaining his answer, the doctor said:

"The question describes a well man who sustains an injury to the rectal or anal region which results in thrombosed hemorrhoid and a fistula from infection, and this infection drains pus for a considerable time. It is only natural that not all of this could drain out, that much of it, and even before it began draining, would be absorbed by the lymphatic system in that area and thus get into the general system.

"There is considerable evidence that Hodgkin's Disease is an infection, although, the organism, the germ causing it or the virus, whatever it may be, has not as yet been described, although it has been searched for diligently by many people, but a significant or rather large number of experts in the anatomical aspects of this disease are of the opinion that it is an infection.

"We know he had an infection of some sort in the rectum following the injury, and we know that he died of Hodgkin's

Disease, which we believe to be due to an infection, and that the course was one and continuous from the time of the injury until the time of his death, and therefore, it is my opinion that there is a direct causal relationship that existed between the injury, the symptoms and infection that followed, and his death from Hodgkin's Disease.''

Describing the disease, Doctor Forman said:

''A. Hodgkin's Disease, named after the man who first described it, is a disease affecting the lymph glands of the body. These lymph glands are filters that work on the various parts of the body, filtering out poisons and infections as they come into the mucous membranes of the various organs, internal organs, or from the outside in through the skin. I might say that the pathology is characterized by a formation of scar tissue in these glands, and that distinguishes it from certain other diseases of the glands where the gland is soft, but these glands are hard.

''Q. It is not the same thing, doctor, as lymphatic leukemia? A. No, it is not. It is quite different.

''Q. Is the specific cause of the condition known? A. No, it is not.

''Q. Is it known that there are factors that influence, either its incidence or its progress, if it occurred? A. Since the work of Steinberg, a surgeon, about the turn of this century, there has been a controversy between pathologists as to whether there is or is not an infection or intoxication.

''Q. And by intoxication, you mean what, sir? A. Absorption of poisons by these glands.

''Q. Is it a malignancy or does it have a different classification? A. There are pathologists who think it is.

''Q. I take it from the way you expressed it that is not your own personal opinion. A. It is not. No, I worked with the disease a long time, from 1911 to 1920.''

Doctor Bruce K. Wiseman, physician and Professor of Medicine, Chairman of the Department of Medicine, The Ohio State University, examined decedent during the time he was a patient at University Hospital and diagnosed his ailment as Hodgkin's Disease. Answering a hypothetical question, as defendant's witness, Doctor Wiseman said that, in his opinion,

there was no direct and probable causal relationship between the injury and disease. Explaining his answer he said that he did not think that trauma or infection, either one, or rectal fistulas are a part of the etiology or cause of Hodgkin's Disease. Doctor Yaw and Doctor Shonk, both of whom are engaged in the general practice of medicine, expressed opinions agreeing with Doctor Wiseman. It is apparent, from the foregoing, that the medical testimony was in sharp conflict.

It is urged by counsel for defendant that the jury in the instant case was permitted to engage in conjecture or speculation. The case of *Brecount* v. *Procter & Gamble Co.*, 166 Ohio St., 477, is cited as authority for this position. The claimant in that case had received an injury to his right eye on May 25, 1946, and, on November 6, 1950, he received another injury to the same eye. In April 1951, an operation was performed on his left eye and, in September 1951, on his right eye, followed by a further operation on the right eye in April 1952. He developed an eye disease known as glaucoma, resulting in the impairment of his vision. His application for compensation filed October 4, 1951, was disallowed by the Industrial Commission upon a finding "That claimant has no disability residual to the injury * * * that the glaucoma affecting both of claimant's eyes, which caused his hospitalization in St. Mary's Hospital in April 1951, is unrelated to and not the result of the injury in this claim." Whether there was a direct and proximate causal relationship between the injury to claimant's eye and the glaucoma presented an issue requiring medical proof. The doctors who testified said that the cause of glaucoma was unknown to medical science. None of them expressed a positive opinion that there was a connection between the injury and the disease. Doctor Schrimpf testified as follows:

"Q. Are you able to say definitely that there is a causal relationship between these two injuries in May of '46 and November 1950 and his glaucoma? A. Well, I just *presume* that there is a connection.

"Q. You presume that that's so but you have never been able to establish a definite causal connection? A. That's right."

The Supreme Court of Ohio said in paragraph three of the syllabus of the *Brecount case*:

"In such a case, a so-called probability, which is actually a conjecture, if based on a probability, is no more than an inference based on an inference and is not sufficient to meet the burden of proof required to establish causal connection between a disability and a previous injury."

In the case at bar we have a situation where medical experts of high standing in their profession expressed positive opinions as to whether there was a direct and proximate causal relationship between decedent's injury and the Hodgkin's Disease which caused his death. These opinions were in sharp conflict and irreconcilable. Under such circumstances, we are of the opinion that the issue presented was one for the jury to resolve. An examination of the entire record leads us to the conclusion that the verdict and judgment may not be set aside, either as being contrary to law or against the manifest weight of the evidence, without invading the province of the jury.

*Judgment affirmed.*

RADCLIFF and COLLIER, JJ., concur.